## Commonwealth *v.* Naguski, Appellant.

Submitted June 13, 1972. Before WRIGHT, P. J., WATKINS, JACOBS, HOFFMAN, SPAULDING, CERCONE, and PACKEL, JJ.

*Stanley Bashman,* and *Donsky, Katz, Levin and Bashman,* for appellant.

*Bernard A. Moore* and *Stewart J. Greenleaf,* Assistant District Attorneys, *William T. Nicholas,* First Assistant District Attorney, and *Milton O. Moss,* District Attorney, for Commonwealth, appellee.

OPINION PER CURIAM, December 11, 1972:
Judgment of sentence affirmed.

———

DISSENTING OPINION BY SPAULDING, J.:
I respectfully dissent.

Appellant Joseph Naguski was convicted of carrying an unlicensed firearm in a motor vehicle in violation of the Uniform Firearms Act,[1] and of possessing narcotic drugs in violation of The Drug, Device and Cosmetic Act,[2] by a jury, in the Court of Common Pleas of Montgomery County. He appeals from the judgment of sentence.

On the evening of April 25, 1969, appellant and four other men arrived in appellant's car at an apartment building in Conshohocken which had been under surveillance for several weeks as a suspected center of drug traffic. The policeman at the scene knew only one of the men, Harold Thomas Rodenbaugh, an occupant of the dwelling. On leaving the building forty minutes later, two of the group returned to the automobile. Appellant, Rodenbaugh and another were heard engaged in an argument which was apparently over the quality of "some grass".[3] As the three re-entered appellant's automobile, the detectives at the site radioed ahead to a patrol car to intercept the vehicle. When the car was stopped, the intercepting officers tilted forward the front seat and uncovered two credit cards which they believed were stolen. On the basis of this suspicion, the officers asked appellant to drive to the precinct house with his four passengers.

---

[1] Act of June 24, 1939, P. L. 872, §628, 18 P.S. §4628(e).

[2] Act of September 26, 1961, P. L. 1664, §1, 35 P.S. §780-1 et seq.

[3] The third person was Jerome Focose, appellant's co-defendant at trial. After the argument Focose was seen walking over to a picket fence nearby. Ten hours later, a bag containing marijuana was found near the fence. The bag was admitted into evidence at trial against both defendants.

When later questioned by the police, Focose admitted that he had purchased marijuana from Rodenbaugh. At trial, the police were permitted to testify as to this admission. We do not reach appellant's contention that admitting this confession by his co-defendant constituted a violation of *Bruton v. U.S.*, 391 U.S. 123 (1968).

At the police station appellant parked his car at the curb immediately past the precinct driveway, with the police cars stopping behind. The area was well lit. One of the three policemen around the vehicle saw the driver's door open. He testified that it appeared as if appellant was "getting ready to get out". Following instructions, appellant got back in the car and drove into the precinct parking lot. The five men were then questioned in the police station.

Some fifteen minutes to an hour[4] after the five had been taken into the police station, one of the police officers went outside to the area where appellant's car had first been parked. In the gutter, beneath the spot where the car door had opened, he found a manila envelope containing seven packets of heroin and an unidentified pistol. Pursuant to a search warrant obtained earlier that evening, the police then searched the second-story apartment previously surveyed and recovered narcotic drugs and related paraphernalia belonging to Rodenbaugh, while arresting five others at the apartment. On the basis of this evidence, appellant and his co-defendant were convicted. Appellant contends, *inter alia,* that evidence is insufficient, as a matter of law, to sustain his conviction.[5]

Appellant's conviction is based solely on circumstantial evidence. While such evidence can suffice to sustain a conviction, it must be such as "reasonably and naturally to justify an inference of the guilt of

---

[4] At trial, seven months after the arrest, the officer testified that he went to the curbside area fifteen minutes after the youths were taken into the station. At the preliminary hearing three weeks after the arrest, the same officer recalled that it had been a "good hour" between taking the youths inside the precinct house and his discovering the contraband outside.

[5] I do not reach the constitutional issues raised by appellant concerning the stopping of his car and the searches of both the car and the apartment.

the accused . . . and of such volume and quality to overcome the presumption of innocence and satisfy the jury of the accused's guilt beyond a reasonable doubt." *Commonwealth v. Clinton,* 391 Pa. 212, 218-19, 137 A. 2d 463 (1958). There is ample cause for suspicion and conjecture in this case, but suspicion and conjecture are not enough to sustain a conviction.

If guilt of possession of contraband cannot be predicated on literal possession, there must at least be a showing of conscious control or dominion over the prohibited goods. *Commonwealth v. Davis,* 444 Pa. 11, 280 A. 2d 119 (1971). It is clear from recent Pennsylvania decisions that where contraband is found at or near an area occupied by several persons, mere presence, proximity to the contraband and the opportunity or power to possess it are insufficient, without more, to establish that any of those in the group were in possession or control. *Commonwealth v. Tirpak,* 441 Pa. 534, 272 A. 2d 476 (1971) ;[6] *Commonwealth v. Tine,* 221 Pa. Superior Ct. 318, 292 A. 2d 483 (1972) ; *Commonwealth v. Townsend,* 428 Pa. 281, 237 A. 2d 192 (1968). Intention to control the contraband must also be proved, but knowledge of its presence is insufficient, without more, to give rise to an inference of that control. *Tirpak,* supra. Further, possession of the premises in which contraband is found has been found insufficient to warrant a finding of the possession or control of the contraband, if others were present. *Commonwealth v. Schulhoff,* 218 Pa. Superior Ct. 209, 275 A. 2d 835 (1971). "Undoubtedly, the fact of posses-

---

[6] In *Tirpak,* seven persons were found sitting in a room with a quantity of narcotics in their midst in plain view of all. Despite their presence in the room, proximity to the contraband and obvious knowledge of its presence, this evidence was held insufficient to prove beyond a reasonable doubt that four of the seven were guilty of possession or control of the contraband.

sion loses all persuasiveness if persons other than the accused had equal access with him to the place in which the property was discovered." *Commonwealth v. Davis,* supra, at 16, quoting 9 Wigmore on Evidence §2513 (3d Ed. 1940). Guided by these developments in the law of constructive or joint possession, we find that the jury necessarily based its finding of possession or control on impermissible inferences.

The most direct link between appellant and the contraband is the finding of a package containing heroin together with a pistol at a spot where appellant's car, containing five persons had been parked some fifteen minutes to an hour earlier. Even if we ignore the time gap arising from the police delay in discovering the contraband in order to view the evidence in a light most favorable to the Commonwealth, the mere inference that the abandoned package came from appellant's automobile is insufficient to support the further inference that appellant was a possessor. Despite the well-lighted condition of the street in front of the precinct house, none of the police officers around the car saw appellant hold or drop any package. He was merely seen opening the door "as if to get out". The parked automobile contained four passengers in addition to appellant, including a known drug trafficker and appellant's co-defendant, a confessed drug purchaser. If the contraband was indeed thrown out of appellant's car, any of the five occupants could have thrown the package in the gutter to which all had access. That appellant may have had knowledge of the presence of contraband is not sufficient to support a finding that he intended to exercise control or dominion over the contraband. *Tirpak,* supra. Nor do we see any rational connection between appellant's owning and driving of the car and possession of the contraband. See *Schulhoff,* supra; *Guevara v. United States,* 242 F. 2d 745 (5th Cir. 1957).

This case is distinguishable from other cases finding joint possession of contraband in an automobile where co-defendants are convicted for or linked to the joint commission of a related crime involving the contraband as tools or fruits thereof. In *Commonwealth v. Shaffer*, 447 Pa. 91, 288 A. 2d 727 (1972), a driver was convicted of possession of stolen goods after some of the contraband was thrown out of the vehicle by one of his passengers. There, however, all of the occupants of the vehicle were convicted for a burglary involving those goods. Similarly, joint possession of firearms and burglary tools has been found where that contraband was used or intended for use in the joint commission of a burglary.[7] In such cases, the evidence of joint participation in the related crime gives rise to an inference of intention to control requisite to establishing joint possession. No such evidence exists here.

That appellant was seen arguing with a drug trafficker and a confessing co-defendant, or that he may have been present in an apartment containing contraband drugs, are circumstances which support his guilt by association, but which cannot support conviction. The evidence in this case raises a strong possibility that appellant may have been in possession of the contraband. Mere possibilities, however, cannot sustain a conviction.

The judgment of sentence should be reversed.

HOFFMAN and PACKEL, JJ., join in this dissenting opinion.

---

[7] *Commonwealth v. Whitman*, 199 Pa. Superior Ct. 631, 186 A. 2d 632 (1962). Accord, *Commonwealth v. Thurman*, 167 Pa. Superior Ct. 642, 76 A. 2d 483 (1950).