Commonwealth *v.* Walley, Appellant.

466

Submitted June 11, 1973. Before WRIGHT, P. J.,
WATKINS, JACOBS, HOFFMAN, SPAULDING, CERCONE, and
SPAETH, JJ.

*A. Jay Molluso,* and *Techner, Rubin, Shapiro, Silverstein & Slass,* for appellant.

*James J. Wilson, James T. Ranney* and *Milton M. Stein,* Assistant District Attorneys, *Richard A. Sprague,* First Assistant District Attorney, and *Arlen Specter,* District Attorney, for Commonwealth, appellee.

OPINION BY WATKINS, J., September 19, 1973:
This is an appeal from the judgment of sentence of the Court of Common Pleas of Philadelphia County, Criminal Division, by the defendant-appellant, Richard Walley, after conviction with two fellow defendants by the court below sitting without a jury, for the feloni-

ous possession of drugs under Section 4 of the Act of September 26, 1961, P. L. 1664, 35 P.S. Sec. 780-4(q) ; from the denial of a motion to suppress the evidence; and from the denial of post-trial motions for a new trial and in arrest of judgment. He was sentenced to one to five years imprisonment and this appeal followed.

At about 4:30 p.m. on the afternoon of May 6, 1971, a number of police officers went to the Bartram Village Apartments at 5408 Eastwick Terrace to execute a search warrant in Apartment 3B. The search warrant was secured for that address and for the persons of Richard Walley, Ronald Allen and Brenda Stewart. Detective Vellucci and Corporal Hunt concealed themselves in the apartment building while the other two officers remained outside the building. The officers observed the appellant walk up to Apartment 3B and enter it using a key taken from his pant's pocket. He remained in the apartment for approximately five minutes then left. He entered an automobile and was driven away by the co-defendant Allen.

At about 5:45 p.m., Allen and Walley returned and while Walley remained in the car, Allen entered the apartment by the use of a key taken from his pocket. Vellucci and Hunt went to the door and receiving no response from their knocking tried the door, found it open and entered. The defendant Allen was sitting in the kitchen talking on the telephone. The defendant Stewart was in the bedroom of the apartment. Shortly afterward, the appellant got out of the car and entered the building approaching the door of 3B and taking his key out of his pocket. He had been followed by the other two officers and was apprehended as he was putting the key back into his pocket.

A search of the premises was then made. On a shelf in a closet off the living room was found a lidless shoe box containing 271 glassine bags of heroin. The box also contained a green paper on which was written

"Pony, I counted all three packs. They are all okay." As the search was being conducted, all three defendants were conversing in the living room. Both the appellant Walley and defendant Stewart called the defendant Allen "Pony." Keys to the apartment were found on Walley and Allen and the sum of $900.00 in various denominations on the appellant.

The apartment in question was a four-room apartment. The testimony showed that the apartment was owned by the defendant Brenda Stewart and that the other two defendants had free access to it by means of keys. They were seen using them to obtain entry and the keys were on their persons at the time of the search. There was also evidence of the surveillance of the premises on March 3, 4, and 5 immediately preceding the arrest at which time the officer testified he observed the defendant Allen and appellant Walley entering and leaving the apartment numerous times.

The question raised by this appeal is whether the evidence established that the appellant had possession and control over the 271 bags of narcotics. This is clearly a question of whether the evidence is sufficient to sustain this conviction. The evidence, of course, must be read in the light most favorable to the Commonwealth and the Commonwealth is entitled to every reasonable inference arising from the peculiar facts of the individual case. *Commonwealth v. Rankin,* 441 Pa. 401, 272 A. 2d 886 (1971).

The appellant was convicted on the theory of joint possession. The Act does not provide that the narcotics be found on the defendant's person. A person may share a common source of narcotics where the circumstances indicate the power of control and the intent to exercise joint control over it. *Commonwealth v. Townsend,* 428 Pa. 281, 237 A. 2d 192 (1968) ; *Commonwealth v. Santiago,* 223 Pa. Superior Ct. 493, 305 A. 2d 378 (1973).

A careful examination of the facts in this case clearly shows that even though ownership was in one defendant the others had equal access to the apartment to which each had a key with their name tags on them and as each was seen entering and leaving the apartment for sometime prior to arrest so that dominion and control was exercised over the premises.

The note found in the box with the drugs indicated a partnership in the control and possession of the drugs. The quantity and type of drug involved eliminates any idea of a private hoard. The "Pony" indicated in the note was applied to the defendant Allen and establishes the involvement and indicates the need for the partners to seek knowledge of the exact amount of the cache.

The Commonwealth does not contend that the mere proximity of the contraband is enough to sustain a conviction. *Commonwealth v. Tine,* 221 Pa. Superior Ct. 318, 292 A. 2d 483 (1972) ; *Commonwealth v. Davis,* 444 Pa. 11, 280 A. 2d 119 (1971) ; *Commonwealth v. Tirpak,* 441 Pa. 534, 272 A. 2d 476 (1971) ; *Commonwealth v. Schulhoff,* 218 Pa. Superior Ct. 209, 275 A. 2d 835 (1971).

The leading case and the one on whose rationale the others depend is *Tirpak,* supra. In that case, the daughter of a house owner had a "pot party" and pleaded guilty to the charge of possession of marijuana. The convictions of the guests of the party in the house were reversed. It was held that the evidence was legally insufficient to convict the guests of possession and control. It was emphasized that the four appellants were among a group of seven guests and that police surveillance disclosed that a "party of some sorts was going on in the house" with numerous people "entering and leaving" throughout the night. In such circumstances, certain people present in the room may not have been smoking and may not have been aware of the presence of marijuana so that as the court said at page 537:

"Under the particular facts and circumstances of this case, this is not sufficient to prove beyond a reasonable doubt that these defendants were guilty of . . . the possession and control of the drugs."

By contrast, in the instant case, the evidence was clearly sufficient to show the power in the appellant as well as the co-defendants to control the supply of heroin found in the shoe box, as manifested by their movements and their access to the apartment by individual keys, which together with the note, indicated concert of action. Add to this the large sum of money found on the appellant. The trier of fact had ample evidence to find beyond a reasonable doubt that Apartment 3B was used as a base of drug operations and the appellant guilty of the possession and control of the drugs in the open shoe box. See *Commonwealth v. Shaffer,* 447 Pa. 91, 288 A. 2d 727 (1972).

Judgment of sentence affirmed.

---

DISSENTING OPINION BY HOFFMAN, J.:

Appellant, Richard Walley, was convicted of possession of dangerous drugs along with two co-defendants and now argues that there was insufficient evidence to support his conviction.

Pursuant to a search warrant, four police officers arrived at the Bartram Village Apartments on May 6, 1971, and began surveillance of Apartment 3B. On two separate occasions that day, police observed appellant and co-defendant Ronald Allen drive up to the apartment complex. On the first occasion, Walley entered Apartment 3B, using a key, while Allen waited in the car. The second time, Allen admitted himself to 3B with a key while Walley waited in the car. Two of the police officers then proceeded to the door and knocked. No one answered. The officers found the door unlocked and they entered the apartment. They found

Allen talking on the telephone in the kitchen and co-defendant Brenda Stewart in the bedroom.

Appellant Walley soon walked up to the scene and the other two policemen brought him into the apartment. The search of 3B uncovered 271 glassine bags containing heroin. The bags were found inside a lidless shoe box which had been sitting in the parlor closet behind some water pipes. There was a note in the box which read, "Pony, I counted all three packs. They are all okay." Allen was repeatedly addressed by his friends as "Pony."

All of the personal effects found in the apartment belonged to co-defendant Stewart, who leased the apartment. No men's clothing was found there. Both appellant and Allen had a key to the apartment.

The question in this case is whether there was sufficient evidence to establish that appellant possessed the drugs. The criteria to determine possession were outlined in *Commonwealth v. Davis*, 444 Pa. 11, 280 A. 2d 119 (1971). The facts in the *Davis* case are as follows: The police discovered stolen goods in a locked cupboard in the apartment of Davis' mistress. The apartment was owned by Davis' former wife and two other persons, none of whom resided there. Davis "had clothing in the bedroom of her apartment and was observed spending the night there on several occasions." His mistress had the only key found to open the cupboard. The Supreme Court found the evidence insufficient to convict Davis of receiving stolen goods. It ruled, "Absent literal possession, a defendant can be said to be in possession of stolen goods only when it is proved that he exercised conscious control or dominion over those goods." Using the criteria established in *Davis*, the evidence was insufficient to prove appellant Walley's possession of the heroin beyond a reasonable doubt.

The mere fact that appellant had a key to the apartment and was seen going in and out on occasion cannot support a finding that he had control or dominion over the contraband in the apartment. In *Commonwealth v. Updegrove*, 223 Pa. Superior Ct. 7, 296 A. 2d 854 (1972), a search of one Stephen Artjuch's apartment disclosed, inter alia, nine marijuana cigarettes lying on the kitchen table. "Artjuch was the sole occupant of the apartment, but he permitted the appellant [Updegrove] to enter and leave at will." In addition, Updegrove's name was on the mailbox along with that of Artjuch. This Court declared that despite the fact that "appellant was one of only three people with access to the drugs . . . there is insufficient evidence to find that the marijuana was in the possession of the appellant." The evidence was more persuasive in *Updegrove* than it is in the present case, yet this Court deemed it insufficient to convict.

In *Commonwealth v. Schulhoff*, 218 Pa. Superior Ct. 209, 275 A. 2d 835 (1971), police raided an apartment and found drugs in the living room couch. At the time of the raid, four people were sleeping in the apartment (none were in the living room). Two of the people, Bernard Beck and the appellant, leased the apartment. Despite appellant's presence at the scene of the crime and his interest in the premises, we held the evidence insufficient to convict appellant of possession of the drugs. See also *Commonwealth v. Tirpak et al.*, 441 Pa. 534, 272 A. 2d 476 (1971), and *Commonwealth v. Tine*, 221 Pa. Superior Ct. 318, 292 A. 2d 483 (1972).

In both *Updegrove* and *Schulhoff*, supra, this Court was presented with factual situations which gave a considerably greater suggestion of possession than is given in the instant case. In *Updegrove*, the appellant not only had access, through a key, to the apartment in question, but his name also appeared on the mailbox.

Furthermore, the contraband was on a table in plain view. In *Schulhoff*, the appellant was the actual lessee of the apartment. In the present case, the evidence ties Walley to the heroin only through his possession of the apartment's key and his occasional visits to 3B. Walley was not the lessee of the apartment. Neither was his name on the mailbox nor any of his clothing found there. Following the line of precedents just cited, one must conclude that appellant Walley's mere possession of the door key and occasional visits to the apartment do not by themselves prove that appellant had either conscious control or dominion over the drugs or even that he had knowledge that contraband was present there.[1]

The majority cites *Commonwealth v. Santiago*, 223 Pa. Superior Ct. 493, 305 A. 2d 378 (1973), as an example of a possession case where the evidence was deemed sufficient to convict. The overwhelming strength of the case against the Santiagos contrasts dramatically with the meager evidence presented in the instant case. We affirmed the Santiagos' convictions because the heroin in that case was in plain view and within an "arm's length" of each of the defendants when the police entered the room. Numerous other items of drug paraphernalia were also found in plain view within working reach of the appellants. Indeed, according to police testimony, "We were in the presence of a wholesale drug operation, and enterprise for the cutting and bagging of bulk heroin." In the present case, the heroin was not in plain view, but was secreted in a closet behind some water pipes. In addition, appel-

---

[1] If the evidence here is sufficient to convict appellant, countless innocent individuals will be placed in danger of drug possession convictions. It then follows that if a quantity of narcotics were found in a closet in the district attorney's office, every district attorney with a key to the office would be found guilty of drug possession.

474

lant Walley was not even in the apartment at the time of the initial raid, much less within an arm's length of the drugs.[2]

Under these circumstances, the evidence was not sufficient to sustain appellant's conviction for possession of drugs.

The judgment of the lower court should be reversed.

SPAULDING and SPAETH, JJ., join in this dissenting opinion.

---

[2] In the recent case of *U. S. v. Bonham*, 477 F. 2d 1137 (3rd Cir. 1973), the Court of Appeals for the Third Circuit held that evidence found secreted in a hidden recess above the doorway of a bedroom shared by defendant and his half-brother was insufficient to establish "possession" of heroin by the defendant. Judge HASTIE, writing for the Majority, said, at p. 1138: "Where a person is the sole occupant of a room and has the right to exclude all others from it, it may logically be inferred that he has knowing dominion and control over objects so situated in his room that he is likely to be aware of their presence. United States v. Palmer, D. C. Cir. 1972, 467 F. 2d 371. But the situation is different where two persons share the occupancy of a room and the right to exclude others from it. Depending upon the circumstances, either or both may have knowing dominion and control over a particular chattel, and choice between these alternatives must be based on more than speculation."